```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ABRAHAM MAGHEN,                              :
                                             :
                          Plaintiff,         :
                                             :                    MEMORANDUM &
      -against-                              :                    ORDER
                                             :                    19-CV-6464 (ILG) (CLP)
UNITED STATES OF AMERICA,                    :
                                             :
                          Defendant.         :
                                             :
                                             :
                                             :
------------------------------------------------------------------:
                                             x
```

GLASSER, Senior United States District Judge:

Plaintiff Abraham Maghen brings this action against Defendant United States of America (the "Government"), pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"). Compl., Dkt. 1. Before the Court is the Government's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"). Mot. to Dismiss, Dkt. 12. For the reasons set forth below, the motion is **DENIED**.

## BACKGROUND

Plaintiff was incarcerated at the Danbury, Connecticut Federal Correctional Institute ("FCI") in July 2018. *See* Compl. ¶ 10. The FCI is a Federal Bureau of Prisons ("BOP") facility. *Id.* ¶ 8; Def's. Mem. in Supp. of Mot. to Dismiss at 1, Dkt. 12-1 ("Mot. to Dismiss"). Plaintiff alleges that on or around July 31, 2018, he was injured while playing soccer on the FCI's recreation field. *See* Compl. at ¶¶ 11, 15. Plaintiff alleges unspecified continuing injuries in connection with the fall. *Id.* ¶ 15.

On November 18, 2019, Plaintiff commenced this action against the Government.[1] The complaint alleges that Plaintiff fell "as a result of a depression/hole in the field." Compl. ¶11. It further alleges that the Government was "negligent and careless" in knowingly allowing the field to fall into and remain in a hazardous condition and that the Government failed to take appropriate safety precautions with respect to use of the field. *Id.* at ¶ 13.

On April 6, 2020, the Government moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The Government argues that this Court lacks jurisdiction over plaintiff's claim because the conduct as alleged falls within the Discretionary Function Exception of the FTCA ("DFE"). *See* Mot. to Dismiss at 1; 28 U.S.C. § 2680(a). The Government specifically asserts that the BOP's conduct concerning the field involved a "discretionary policy choice" that shields it from liability under the DFE. Mot. to Dismiss at 7.

Plaintiff opposed. Opp. Mem., Dkt. 15. The Government filed its reply on May 18, 2020. Reply Mem., Dkt. 16.

## DISCUSSION

### I. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Plaintiffs must prove the existence of subject matter jurisdiction by a preponderance of the evidence. *Collins v. United States*, 996 F.3d 102, 108 (2d Cir. 2021). "'In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction.'" *Id.* at 119 n.1 (quoting *Fountain v. Karim*,

---

[1] On April 30, 2019, plaintiff filed a notice of claim with the BOP relating to the events of July 31, 2018. Compl. ¶ 9; Mot. to Dismiss at 2. The BOP denied the claim on October 17, 2019. Mot. to Dismiss at 2.

838 F.3d 129, 134 (2d Cir. 2016)). In addition, "[a] district court may resolve a motion to dismiss for lack of subject-matter jurisdiction by referring to evidence outside the pleadings." *Gjidija v. United States*, 848 F. App'x. 451, 454 (2d Cir. 2021) (citing *Makarova*, 201 F.3d at 113).

## II. Subject Matter Jurisdiction Under the FTCA and the DFE

The FTCA creates a limited waiver of sovereign immunity for claims against the United States. This waiver "confers jurisdiction on federal district courts for tort suits against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Id.* at 454 (quoting 28 U.S.C. § 1346(b)(1)).

The FTCA's waiver of immunity is subject to the DFE, which bars governmental liability with respect to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Courts do not retain subject matter jurisdiction over claims that fall within the DFE, *see Huntress v. United States*, 810 F. App'x 74, 76 (2d Cir. 2020) *cert. denied*, 141 S. Ct. 1056 (2021), and "generally it is held that the Government bears the burden of proving the applicability of the [DFE], although there is disagreement." 14 Charles A. Wright, Arthur R. Miller, & Helen Hershkoff, Federal Practice and Procedure § 3658.1 (4th ed.).

The framework for evaluating whether the DFE bars a claim is known as the two-step *Berkovitz-Gaubert* test. *See Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991). "According to the *Berkovitz-Gaubert* test, the DFE bars suit only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2)

the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citing *Gaubert*, 499 U.S. at 322-23; *Berkovitz*, 486 U.S. at 536-37).

It follows that where the first prong is satisfied, a plaintiff asserting a FTCA claim "still can prevail under the second part of the analysis, which examines whether the government actions at issue 'are of the nature and quality that Congress intended to shield from tort liability.'" *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984)).  To that end, the cases teach that the DFE was enacted to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323 (quoting *Varig*, 467 U.S. at 814).  The same consideration put in the context of the *Bivens* cases is "the risk of disruptive intrusion by the Judiciary into the functioning of other branches," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017); in this case, the Executive Branch.

Accordingly, "Government actions involving the exercise of judgment or choice are exempted from suit under the FTCA only if they are 'susceptible to policy analysis,' and involve a 'decision[ ] grounded in social, economic, and political policy.'" *O'Toole*, 295 F.3d at 1033-34 (quoting *Gaubert*, 499 U.S. at 325, 323) (internal citations omitted).  As a result, "[f]or a complaint to survive a motion to dismiss [based on the DFE], it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25.  Moreover, while "'[v]irtually any government action can be traced back to a policy decision of some kind, [] an attenuated tie is not enough to show that conduct is grounded in policy.'" *Hartman v. Holder*, 2009 WL 792185,

4

at *7 (E.D.N.Y. Mar. 23, 2009) (quoting *Shansky v. United States*, 164 F.3d 688, 693 (1st Cir.1999)). Rather, to implicate the DFE, a decision must be "fraught with" considerations of public policy. *O'Toole*, 295 F.3d at 1034 (internal quotation marks and citation omitted).

Here, as regards the first condition, the Court observes that the "acts alleged to be negligent"—namely, a failure to maintain, repair, or warn of a known hazard on a recreation field—were "not compelled by statute or regulation" and were discretionary in that they necessarily involved "an 'element of judgment or choice'" by the BOP in failing to address the hazard. *Coulthurst*, 214 F.3d at 109 (quoting *Berkovitz*, 486 U.S. at 536). The first prong of the *Berkovitz-Gaubert* test is satisfied.

As to the second condition, at the outset, it should be observed that "[a]s has been noted by numerous courts, reconciling conflicting case law in this area can be difficult." *O'Toole*, 295 F.3d at 1035; *see also Varig*, 467 U.S. at 811-12 (observing that "the Court's reading of the [FTCA] admittedly has not followed a straight line."). Indeed, "there is unquestionably an element of subjective characterization to the second part of the [DFE] analysis," *O'Toole*, 295 F.3d at 1036, the result of which has been a fair amount of friction between the broad or narrow views taken by courts as to the exception's application.

This Court is of the mind that a narrow reading of the DFE is the better one and agrees that "if the word 'discretionary' is given a broad construction, it could almost completely nullify the goal of the [FTCA]." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1999). Particularly where, as here, "the government takes on the role of a private landowner" and the claim involves the "mundane question of routine [] maintenance," "[t]he danger that the discretionary function exception will swallow the FTCA is especially great." *O'Toole*, 295 F.3d 1037. Judge Dearie has similarly captured the essence of this premise, writing that "[c]onstruing the discretionary function

5

exception so broadly as to include routine maintenance work would undermine the goal and purpose of the FTCA." *Cohen v. United States*, 2004 WL 502924, at *7 (E.D.N.Y. Jan. 29, 2004).

In this case, the Plaintiff contends that the BOP's "failure to fill a hole on a playing field known to the facility or to warn players of it" involved a "regular maintenance function" and equates to negligence that is "unrelated to any plausible policy objectives." Opp. Mem. at 3-4. The Government, on the other hand, argues that "decisions regarding manner of maintenance of prison grounds are *inherently* grounded in budgetary and security and therefore, policy, considerations." Reply Mem. at 5 (emphasis added).  It cites "allocation of limited BOP resources" as a policy consideration that should render its decision to forego the necessary maintenance "immune from judicial second guessing." *Id.* at 1.

The Court declines to adopt the Government's broad interpretation of the DFE and agrees that "an agency's decision to forego, for fiscal reasons, the routine maintenance of its property— maintenance that would be expected of any other landowner—is not the kind of policy decision that the [DFE] protects." *O'Toole*, 295 F.3d 1036.  It finds that the allegations at issue relate to precisely the type of governmental conduct that the DFE is not intended to shield; namely, that the Government's knowing failure to undertake the routine, "mundane" maintenance of fixing a hole in the ground resulted in the Plaintiff's injury.

The Court further notes that requiring the landowner, here, the Executive Branch of Government, to discharge the routine function of maintaining its premises to avoid an unreasonable risk of harm to those lawfully and foreseeably on it—a requirement embedded in the common law—is hardly to invite an intrusion by the Judiciary on the functions of the Executive Branch.  A private person would be liable to this Plaintiff if this claim arose under the law of the place where the act or omission occurred, and so should the United States be.  To find otherwise

would be to essentially "shield the [Government's] alleged negligence [and] unfairly allocate the resulting harm on the [Plaintiff]." *O'Toole*, 295 F.3d at 1036.

To find otherwise would also be to clothe the Government with immunity for nearly any harm it may cause if, in exercising its "discretion," some amorphous "public policy" is served or the decision is somehow "susceptible to public policy analysis." In case after case, those quoted words are recited mantra-like by the Government in contesting claims made against it, with all too frequent success. In this case, for example, the Government vaguely alludes to budget and security "policy" concerns. But what, precisely, is the policy consideration? Is there a public policy served by ignoring a condition posing an unreasonable risk of harm to another? How is the analysis of that policy conducted?

The Court declines to blithely accept the Government's hollow proffer that its decision to ignore a dangerous hazard was somehow "fraught" with policy concerns. The Plaintiff's claim may proceed.

## CONCLUSION

The Government's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is accordingly **DENIED** in its entirety. The Government is hereby directed to file an answer to the complaint within 14 days of the date of this Order.

SO ORDERED.

/s/
I. Leo Glasser, U.S.D.J.

Brooklyn, New York
September 14, 2021